[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
By application filed November 28, 1990, the plaintiff, requested this court to discharge a mechanic's lien placed by Arney, Inc. on property owned by Frank and Frances Stodolink and described in Schedule A of the application and on the leasehold interest in that property described in Schedule B allocated thereto. In the memorandum of law in support of the application, plaintiffs recite the following uncontested facts.
 1. On December 14, 1989, McDonald's Corporation ("McDonald's") entered into a contract with In-Con Construction Co., Inc. ("In-Con") for the construction of a McDonald's Restaurant ("the restaurant") at 2439 Barnum Avenue in Stratford, Connecticut ("the property"). The property is owned by Frank E. Stodolink and Frances Marion Stodolink ("the Stodolinks"), and was leased to McDonald's on August 26, 1969.
 2. Arney, Inc. ("Arney") furnished materials and rendered services as a subcontractor in the construction of the restaurant. The construction was substantially completed on June 29, 1990, and the restaurant was opened for business the first week in July. In connection with a dispute arising out of In-Con's alleged failure to pay Arney for materials furnished and services rendered in construction of the restaurant, on September 19, 1990, Arney filed a mechanic's lien on the property.
For purposes of this motion, all parties agree that services were rendered and materials were provided but that payment of $30,234.00 remains outstanding despite the defendant's complete performance in accordance with the terms of the subcontract. Nor is there any dispute that the property is in fact owned by the plaintiffs who leased it to Franchise Realty, which lease was subsequently assigned to McDonald's Corp. The lease contemplated the complete construction of the restaurant (McDonald's) and it authorized the tenant to CT Page 3202 construct the restaurant and to obtain whatever municipal approvals were necessary to do so and to make any alterations, additions and improvements thereto.
The plaintiffs claim that the mechanic's lien in question is invalid as a matter of law because Arney did not furnish materials or render its services pursuant to an agreement with or by consent of the Stodolinks who were the owners of the land.
The right to place a mechanic's lien on realty is created by Connecticut General Statutes 49-33, which states:
 49-33 Mechanic's Lien. Precedence. Rights of Subcontractors.
 (a) If any person has a claim for more than ten dollars for materials furnished or services rendered in the construction, raising, removal or repairs of any building or any of it appurtenances or in the improvement of any lot or in the site development or subdivision of any plot of land, and the claim is by virtue of an agreement with or by consent of the owner of the land upon which the building is being erected or has been erected or has been moved, or by consent of the owner of the lot being improved or by consent of the owner of the plot of land being improved or subdivided, or of some person having authority from or rightfully acting for the owner in procuring the labor or materials, the building, with the land on which it stands or the lot in the event that the materials were furnished or services were rendered in the site development or subdivision of any plot of land, then the plot of land, is subject to the payment of the claim.
The purpose of the mechanic's lien is to give one who furnishes materials or services the security of the building and land for the payment of his claim by making such claim a lien thereon. H S Torrington Associates v. Lutz Engineering Co., 185 Conn. 549,553 (1981).
A lienor must comply with the statutory requirements of49-33 in order to perfect his claims. Id. However, its remedial intent warrants a liberal construction of the law. Id.
 "[T]he principles that guide our interpretation of mechanic's lien legislation are well settled. Although this legislation creates a CT Page 3203 statutory lien in derogation of the common law . . . its remedial purpose to furnish security for a contractor's labor and materials requires a generous construction . . . generosity of spirit does not, however, permit departure from reasonable compliance with the specific provision of the statute. (Citations omitted).
J. C. Penney Properties, Inc. v. Peter M. Santella Co., 210 Conn. 510,514 (1989). See also Camputaro v. Stuart Hardware Corp.,180 Conn. 545. The statute's "remedial purpose to furnish security for a contractor's labor and materials requires a generous construction." Id. at 550.
In accordance with the statute, two categories of people are considered under the statute:
 those who provide services or materials in connection with the construction of a building are entitled to claim a lien on the land that they have improved if they fall into one of two categories. Lienors are protected if they have a claim either (1) by virtue of an agreement, with or the consent of the owner of the land[1], or (2) by the consent of some person having authority from or rightfully acting for such owner in procuring labor or materials.
Hall v. Peacock Fixture Electric Co., 193 Conn. 290, 293
(1984).
The lienor has the burden to show probable cause to sustain the validity of the lien. In order to establish it, a person who has improved the land must show he is one of those persons entitled to claim a lien. Newtown Associates v. Northeast Structures, Inc., 15 Conn. App. 633, 637-638 (1988). To qualify he must have furnished materials or services pursuant to either an express or complied agreement with, or the consent of the landowner or his agent.
The facts show that Arney did not furnish materials or render services by virtue of an agreement with the Stodolinks. Nor does the Stodolink's allowance of the work on their property constitute "consent" under Connecticut General Statute49-33(a). See Lyon v. Champion, 62 Conn. 75, 77 (1892).
The Supreme Court stated in Hall v. Peacock Fixture 
Electric Co., supra, at 295, the mere granting of permission by the owner for work to be done on his property is not sufficient to establish consent to support a mechanic's lien on the CT Page 3204 property in the absence of a promise to guarantee payment. In fact, the lease involved herein explicitly states that the lessee will make any improvements "at its sole cost and expense." (Defendant's memo in opposition, exhibit B, page 2) and that it has "no authority, express or implied to create any lien charge or encumbrance, upon the estate of the lessor in the demised premises." (Id.)
Furthermore, the facts of this case do not demonstrate an agency theory[2] upon which the defendants can rely. The three elements required to show agency are "(1) a manifestation by the principal that the agency will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." Beckenstein v. Potter Carrier, Inc., 191 Conn. 120,133 (1983).
Absent evidence then of consent of agreement, probable cause cannot be established. The only theory reasonably left for consideration is that of equitable conversion: whether a mechanic's lien can attach the equitable interest of a lessee/owner of a leasehold.
Under a theory of equitable conversion, some courts have allowed a lien to attach to the equitable interest of a contract vendee under a purchase agreement, prior to the passing of title to the vendee, "but only when the purchase agreement requires the vendee to improve the land during the executory period." Connecticut Light Power Company v. Dicesare-Bentley Engineers, Inc., 3 Conn. L. Rptr. No. 7, 220, 222 (February 11, 1991) (emphasis added). The questions before the court ask whether the theory of equitable conversion applies in this case, because McDonald's is a lessee, not a contract vendee, and if the theory of equitable conversion can be applied to a lessee's interest, whether it should be applied in this case because McDonald's was not required, under the terms of the lease, to improve the land.
The Lease unambiguously contemplates the leasing of the premises by the Plaintiff to McDonald's for the purpose of erecting the Restaurant thereon. The Lease provides that the legally described premises are to be demised to McDonald's ". . . together with all [McDonald's] easements and appurtenances in adjoining and adjacent . . . roads . . . whether public or private, reasonably required for the installation, maintenance, operation and service of [all contemplated utilities and access ways] . . . for the use and benefit of the above-described . . . real estate, including the improvements to be erected thereon . " (Lease, page 1). Furthermore, the Lease provides that the "[l]essee anticipates constructing . . . a building, driveways, and parking area . . ." (Lease, page 2). In fact, failure to CT Page 3205 obtain approvals necessary to construct the Restaurant permitted the Lease to be cancelled. In summary, it is fair to say that the construction of the Restaurant was an integral component of the Lease.
The doctrine of equitable conversion has been applied to cases where, during the executory period of an agreement to purchase real estate, the vendee, pursuant to a directive within the purchase agreement, undertakes to construct improvements on the real estate. The cases, cited in Connecticut Light and Power v. Dicesare-Bentley Engineers, Inc., supra, ". . . do allow attachment to the extent of a vendee's equitable interest in property, but only when the purchase agreement requires the vendee to improve the land during the executory period." 3 Conn. L. Rptr. No. 7, 222.
Hooker v. McGlone, 42 Conn. 95 (1875) held that a building, erected with the consent of the owner of the land, was subject to a lien by virtue of the purchase agreement directing the purchaser to so construct the building. Id. at 102. In addition, however, McGlone who contracted for the materials used was the landowner's partner and agent when purchasing the materials. Hillhouse v. Pratt, 74 Conn. 113, 117 (1981) provided that where the vendee had a contract of purchase that required him to build a house before title could pass he had "such an equitable interest in the land as would make him so far as owner under a mechanic's lien acts the he could make a building contract under which a lien might attach, to the extent of the estate which he was to acquire, and afterward did acquire under his contract of purchase." See also Harmon v. Hardy,104 Conn. 653 (1926) and Seipold v. Gibbud, 110 Conn. 392 (1930) (holding that where the purchaser is required by contract to complete construction of a building on that property before title could pass, the lien is permitted). The theory behind these cases is that where the party calling for the work to be done has an agreement to purpose property sought to be liened, he has an equitable interest that will ripen and merge into an lienable fee simple ownership's interest in the land at the end of an executory period.
The theory of equitable conversion, if it is to be applied at all, does so only where the interest sought to be attached is an equitable ownership interest that will ripen into a legal ownership interest that is subject to a lien under Connecticut's mechanic's lien statute. In this case, McDonald's has no such equitable interest. McDonald's is merely a lessee, not a contract vendee, and unlike a contract vendee, McDonald's does not have an executory equitable ownership interest in the land that will ripen into a lienable ownership interest at some future time. CT Page 3206
A leasehold interest, although lienable and executory, has not been successfully relied upon to sustain a mechanic's lien under the doctrine of equitable conversion[3]. All the cases cited Connecticut Light Power v. Dicesare-Bentley Engineers, Inc., supra, as well as those in the supplemental briefs presented by the parties herein involved purchase agreements. Only Torno Donaher, Inc. v. Covino, 19 Conn. Sup. 55 (1952) concerned a lease but the court therein upheld the mechanic's lien on the owner's property not on a theory of equitable conversion, but rather on the grounds that the owner "consented" to the performance of the work under the terms of the mechanic's lien statute by reviewing and approving the construction plans. Id. at 59.
Finally, even were the theory of equitable conversion available to a leasehold interest, it would not be applicable to this case, however, because the lease involved herein does not require the lessee to improve the land. In that regard, this case is similar to Connecticut Light power v. Dicesare-Bentley Engineers, Inc., supra, in which the court discharged a mechanic's lien for work done pursuant to an agreement with a contract vendee because neither the vendee, nor its affiliate who leased the property, were specifically required to put any improvements on the land, though both the purchase agreement and the lease with the purchaser's affiliate contemplated that they would do so. Connecticut Light Power v. Dicesare-Bentley Engineers, Inc., supra, properly distinguished Hillhouse v. Pratt, 74 Conn. 113 (1901), and Hannan v. Handy, 104 Conn. 653
(1926), because the purchase agreements in those cases required the purchasers to construct buildings on the property during the executory period before title could pass. Id. at 223. As in Connecticut Light Power v. Dicesare-Bentley Engineers, Inc., although the lease in this case allowed McDonald's to construct a building on the property, and was, perhaps even written with the rent calculated on the assumption one would be build, it did not require McDonald's to do so. Merely requiring the tenant to bear the costs of obtaining planning and zoning approval does not qualify the defendant/subcontractor for a lien based on equitable conversion. McDonald's was not specifically required by contract or lease to put any improvements on the land. Id. at 223.
Therefore, in sum, because the defendants have not established the requisite probable cause needed to sustain the mechanic's lien, it must be discharged.
KATZ, Judge